UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.    ) | No. 13-cr-10196-RWZ-2 |
| ) | |
| BARRY SPENCER,     ) | |
| Defendant.    ) | |
| ) | |

**DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR NON-GUIDELINE SENTENCE**

The Defendant, Barry Spencer ("Spencer"), submits this memorandum in support of his request for a non-Guideline sentence of Probation. Spencer also requests that the Court not impose a fine, as he is indigent.

**I.     Post-*Booker* Sentencing Considerations.**

A sentencing court's approach to sentencing is well established. Following United States v. Booker, 543 U.S. 220 (2005), the United States Sentencing Guidelines are no longer mandatory but, rather, advisory. The Guidelines are but one of the factors to consider in crafting an appropriate sentence. Sentences should be crafted with the primary sentencing mandate of 18 U.S.C. § 3553(a) in mind, which states that courts must impose the minimally-sufficient sentence to achieve the statutory purposes of punishment – justice, deterrence, incapacitation, and rehabilitation. That is:

> The court shall impose a sentence *sufficient, but not greater than necessary,* to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)].

18 U.S.C. § 3553(a)(emphasis added). The Court should "'consider every convicted person as an individual and every case as an unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 52 (2007)).

1

In <u>Gall</u>, the Supreme Court outlined the procedures to be followed in the post-<u>Booker</u> sentencing regime.[1]  First, the sentencing court must correctly calculate the Guidelines to determine a "starting point." <u>Martin</u>, 520 F.3d at 91.  This includes consideration of departure grounds.  <u>Id.</u>  While the Guidelines continue to be important, they are neither presumptively controlling, nor *per se* reasonable.  <u>Gall</u>, 552 U.S. at 49-50; <u>Martin</u>, 520 F.3d at 91.  Indeed, "courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines."  <u>Kimbrough v. United States</u>, 552 U.S. 85, 101 (2007)(internal quotations omitted).  <u>See</u> <u>also</u> <u>United States v. Rodriguez</u>, 527 F.3d 221, 227 (1st Cir. 2008)("a sentencing court can deviate from the guidelines based on general policy considerations.").

After calculating the guidelines sentencing range, the sentencing court must next consider the factors delineated in 18 U.S.C. § 3553(a) in determining what sentence is "sufficient, but not greater than necessary" to accomplish the goals of sentencing.  Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences of available; (4) any relevant policy statement issued by the Sentencing Commission; (5) the need to avoid unwarranted sentencing disparity; and (6) the need to provide restitution.  18 U.S.C. § 3553(a); <u>Gall</u>, 552 U.S. at 50 n.6.  These factors should not be viewed as a limitation on a sentencing judge's ability to consider facts and circumstances that do not fit neatly into the enumerated factors.

Ultimately, a sentencing court may consider any circumstance that bears on the overarching principle that courts should craft sentences that are "sufficient, but not greater than necessary" to

---

[1] In <u>Gall</u>, the Court "reject[ed] an appellate rule that requires 'extraordinary circumstances to justify a sentence outside the Guidelines range.'"  <u>Id.</u> at 47.  The Court also made it clear that appellate courts are not to impose their own judgments on what appropriate sentences should be in particular cases.  So long as the record demonstrates that the district court considered the § 3553(a) factors and supported its sentence with a rationale supported by the record, the sentence should stand under the deferential abuse of discretion standard on appeal.  <u>Id.</u> at 50-51.

accomplish the goals of sentencing.  See Rodriguez, 527 F.3d at 229 ("even if a specific sentencing rationale cannot be considered under the aegis of a particular sub-part of section 3553(a), such a proscription does not bar consideration of that factor in the course of a more holistic review of the full panoply of section 3553(a) factors.").

## II. Section 3553(a) Factors

Spencer submits that, upon consideration of the factors set forth in 18 U.S.C. §3553(a), a sentence of Probation is sufficient, but not greater than necessary to accomplish the purposes of sentencing.

### *Nature and Circumstances of the Offense and Spencer's History and Characteristics*

As noted in the Presentence Report, Spencer has been a drug addict for much of his adult life.  As a result, Spencer has been charged repeatedly with drug distribution and drug possession offenses.  Significantly, the amount of crack cocaine involved in the instant case ($20 for 0.15 grams) reflects the type of offender Spencer has been--an exceptionally small time street dealer who sells drugs to support his drug habit.  What is the appropriate sentence in these circumstances?  Spencer submits that a sentencing of Probation is an adequate sentence, in light of the following considerations.

### *Policy Considerations*

Society's views toward the reasonableness of lengthy sentences have recently shifted. Lengthy prison sentences have bloated prison populations past reasonable standards and created massive financial strains on tax payers.  These burdens are particularly unjustified considering studies revealing that lengthy sentences do little to protect society or reduce recidivism rates. Legislatures at both the state and federal level have begun to take notice.

Several bipartisan bills have been introduced in both the United States Senate and House of Representatives.[2]  These bills are aimed at reducing sentences for non-violent, low level offenders and alleviating the strain on prison populations and budgets.  For example, in October 2015, the Senate Judiciary Committee voted 15-5 to report the Sentencing Reform and Corrections Act of 2015 to the full Senate.  The sentencing reform portion of that bill includes reductions to mandatory minimum sentences for repeat drug offenders.  S. 2123, 114th Cong., § 101 (2015).  The corrections portion of the bill includes increases of up to ten days a month in good time credits and expands the amount of time that may be served in prerelease custody.  S. 2123, 114th Cong., § 202 (2015).  As Senator Mike Lee (R-Utah) observed, "Since my time as a federal prosecutor, I have been concerned that federal sentencing laws too often require punishments that just don't fit the crime.  These laws require many nonviolent offenders to spend years in prison, often with few opportunities for meaningful reform."  Senator Sheldon Whitehouse (D-R.I.) observed that the bill "reflects a growing bipartisan recognition that we cannot incarcerate our way to safer communities, and that the current system too often pushes individuals into a cycle of recidivism that is hard to break."  The House drafted a counterpart bill similar to the Senate's bill, the Sentencing Reform Act of 2015 (H.R. 3713), which has also been reported out.

---

[2] These bills came on the heels of a report by the United States Sentencing Commission, which "unanimously agree[d] that mandatory minimum sentences in their current form have led to unintended results, caused unwarranted disparity in sentencing, and contributed to the current crisis in the federal prison population and budget." *Reevaluating the Effectiveness of Federal Mandatory Minimum Sentences: Hearing before Senate Comm. on the Judiciary*, 113th Cong. 83 (2013) (statement of Hon. Patti B. Saris, Chair, United States Sentencing Commission).  The Commission found that the size of the BOP's population now exceeds its capacity by 38 to 53 percent on average.  *Id.*  The Commission also found that reducing drug sentences (in the context of the crack cocaine Guidelines amendment) "did not lead to an increased propensity to reoffend." *Id.* at 84.

Changes to mandatory minimums have already been implemented at the state level. For example, in Massachusetts a 2012 amendment to the drug statutes reduced mandatory minimum sentences almost across the board for distribution and trafficking offenses. 2011 Mass. H.B. 3818. That amendment decreased the mandatory minimum sentence for repeat crack distribution offenders from 3 years to 2 years. M.G.L. c. 94C, §32A(b). Such a defendant is eligible for parole as early as one year after commitment. M.G.L. c. 94C, § 32A(e). Even persons who **traffic** in small amounts of crack cocaine are subject to a mandatory minimum of only 2 years, down from 3 years under the 2012 amendment. The 2012 amendment also increased the trafficking threshold amount from 14 grams to 18 grams. Of course, Spencer has been convicted of the distribution of 0.15grams of crack – not 18 grams.

"More than 30 states have reduced, eliminated, or reformed their mandatory minimum and drug sentencing laws over the past decade, and crime has gone down, not up."[3] All of these changes reflect a growing understanding that lengthy incarceration is not the best means of protecting society. In short, lengthy prison sentences do little to further the goals of sentencing and create unintended burdens on society. Certainly, a lengthy sentence for Spencer would unnecessarily burden the prison population.

*Career Offender Status*

According to the Presentence Report ("PSR"), Spencer's classification as a Career Offender raises his Offense Level from 12 to 32. It is firmly established that, "courts may vary

---

[3] Families Against Mandatory Minimums, *The Dangerous Myths of NAAUS: A Response to the National Association of Assistant U.S. Attorneys' Paper Titled "The Dangerous Myths of Drug Sentencing 'Reform'"*, Federal Sentencing Reporter, July 2015, Vo. 28, No. I, p. 34 (citing VERA INSTITUTE OF JUSTICE, DRUG WAR DETENTE?: A REVIEW OF STATE-LEVEL DRUG LAW REFORM, 2009-2013 App. B (Apr. 2014), http://www.vera.org/sites/default/files/resources/downloads/state-druglaw-reform-review-2009-2013-v6.pdf; PEW CHARITABLE TRUSTS, STATES CUT BOTH CRIME AND IMPRISONMENT (Dec. 2013), http://www.pewtrusts.org/en/multimedia/datavisualizations/2013/states-cut-both-crime-and-imprisonment).

[from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." Kimbrough v. United States, 128 S. Ct. 558, 570 (2007)(internal quotations omitted). Policy disagreements with respect to career offender designations are well within the Court's discretionary function. Disagreement with the career offender designation was recognized by the First Circuit as an encouraged departure ground even before Booker. United States v. Perez, 160 F.3d 87, 89 (1st Cir. 1998); United States v. Lindia, 82 F.3d 1154, 1165 (1st Cir. 1996). A sentencing court may decline to apply a career offender designation if it would result in an overly punitive sentence. See, e.g., United States v. Pruitt, 502 F.3d 1154, 1170 (10th Cir. 2007)("The career offender guideline is an especially appropriate context for the exercise of Booker discretion because any variance would be based on the particular circumstances of the offender and the offense rather than a blunderbuss attack on the sentencing policy reflected in the Guidelines.")

A review of Spencer's Criminal History (PSR at 8-24) reveals a man who has committed minor offenses from the age of 19 until his arrest for the instant offense in May 2013, at the age of 44 years old. The offenses reflect that Spencer has been a drug abuser his entire adult life and his drug arrests and convictions always revolved around his drug habit. The first offense that caused Spencer to be classified as a Career Offender was an Armed Robbery conviction in 1994 (at the age of 24). Spencer's co-defendant placed a knife at the throat of a man to rob him of $40 while the man was using an ATM (PSR ¶44). For his role, Spencer received a 3 to 5 year state prison sentence that was suspended, and he was placed on probation for two years. Spencer violated his probation twice, and he was committed on his sentence in 1996. His release in August 1998 was almost, but not quite, 15 years before the instant offense. Thus, Spencer qualified as a Career Offender under the advisory Guidelines (PSR ¶36), since he had drug

distribution convictions (3 bags of crack cocaine, and an $18 bag of crack) in 1999, for which he was sentenced, incarcerated and released in December 2002. (PSR ¶¶ 49-50).

Spencer's $20 crack cocaine conviction in the instant case and his resultant Career Offender status could not possibly typify the person Congress had in mind when it enacted 28 U.S.C. §194(h).

*Pretrial Incarceration*

When Spencer was charged in the instant case, his bail was immediately revoked on his pending 2011 state court case. (PSR ¶60) (Exhibit A). Spencer has been held for 31 months on a state court case in which he could have simply pled guilty in May or June of 2013, to time served and been released to his federal detainer. As noted in the letter of Frank Santisi, Spencer's appointed stand-by counsel for the state court proceedings (attached as Exhibit B), Spencer could have pled guilty to **both** his 2006 and 2011 cases no later than January 2014, and received a sentence of time served. Inexplicably, Spencer has refused to plead guilty and has served needlessly 31 months in state, rather than federal custody.

**Spencer's Future Prospect**s

Spencer has been drug free for 31 months, as he has been incarcerated since his arrest in May 2013 -- a very good start for someone who wants to change his lifestyle. While incarcerated, Spencer has been certified by ServSafe as a qualified food manager. (See Exhibit C). Spencer has been a short order cook at various times in recent years, and believes that he has a job waiting for him upon his release with his previous employer. Spencer has worked in the kitchen while incarcerated at the Old Colony correctional facility and earned 95 days of state time credit, which, of course, is of no use to Spencer in this proceeding. (Exhibit D, attached hereto) However, this work demonstrates Spencer's dedication to his vocation.

Finally, Spencer wants to assume the responsibilities of helping to support and care for his 9 year old daughter, who resides in Boston with Spencer's long-time girlfriend.

### *The Need for the Sentence Imposed*

A sentence of Probation will accomplish the goals of sentencing. Spencer has already served 31 months since the revocation of his state court bail, which certainly more than reflects the seriousness of his $20 crack conviction. As a result, Spencer has had adequate time to reflect upon his way of life while continuing to work at his craft. Thus, the goals set forth in 18 USSC §3553(a)(2) have been satisfied. For all these reasons, Spencer asks that the Court sentence him to Probation, with strict conditions, including drug treatment and job placement. Spencer believes that upon his release he will be able to obtain a job as a chef, help support his daughter, and remain drug free.

BARRY SPENCER
By his attorney,

 /s/ Thomas J. Butters
Thomas J. Butters
B.B.O. 068260
BUTTERS BRAZILIAN LLP
One Exeter Plaza
Boston, Massachusetts 02116
(617) 367-2600
Dated:  December 30, 2015          butters@buttersbrazilian.com

**CERTIFICATE OF SERVICE**

I hereby certify that paper copies of the above document were delivered, in hand, to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

/s/ Thomas J. Butters
Thomas J. Butters